IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BANKERS MUTUAL CAPITAL
CORPORATION, a Florida corporation,

    Plaintiff,

vs.

COMPUSA, INC., a Delaware corporation,

    Defendant.
_____/

CASE NO: 02-81123-Civ-Middlebrooks

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

Plaintiff BANKERS MUTUAL CAPITAL CORPORATION ("BANKERS"), by and through the undersigned counsel, files this Memorandum of Law in Opposition to Defendant COMPUSA, INC.'s ("COMPUSA") Motion to Dismiss or, Alternatively, Motion for a More Definite Statement. In Opposition to the Motion, BANKERS states as follows:

### STANDARD TO BE APPLIED ON A MOTION TO DISMISS

The standard which governs the determination of COMPUSA's motion to dismiss is well settled:

> Rule 12 (b) (6) of the Federal Rules of Civil Procedure permits a court to dismiss a claim on the basis of a dispositive issue of law. The Court however, must confine its analysis to the allegations as stated in the Complaint. It must accept those allegations as true and resolve all factual issues in favor of the non-moving party. The threshold of sufficiency that a Complaint must meet is exceedingly low. Accordingly, a claim may be dismissed pursuant to Rule 12 (b) (6) only if it is clear that no relief can be granted under any facts consistent with the allegations. <u>Primerica Financial Services, Inc., v. Mitchell</u>, 48 F. Supp. 2d 1363, 1366 (S.D. Fla. 1999).

"The law in this Circuit is well-settled that the accepted rule for appraising the sufficiency



of a Complaint is that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. , *citing* S.E.C. v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988).

Where there are disputed issues, granting a Motion to Dismiss is improper. Primerica Financial Services, Inc., v. Mitchell, 48 F. Supp. 2d at 1366. Once the allegations of the requisite cause of action are stated, the issues on a Motion to Dismiss are more appropriately addressed in a Motion for Summary Judgment. See e.g. Primerica Financial Services, Inc., v. Mitchell, *supra*.

### THE ALLEGATIONS OF THE COMPLAINT

The following are the pertinent allegations of the Complaint, which must be accepted as true for purposes of this motion. See Executive 100, Inc., v. Martin County, 922 F.2d 1536, 1539 (11th Cir. 1991), *cert denied*, 502 U.S. 810, 112 S.Ct. 55.

### A. BANKERS' Business

BANKERS is in the business of providing purchase order financing. In the usual transaction, a BANKERS client receives a purchase order from an account debtor calling for the client to provide goods described in the Purchase Order. The account debtor is usually a retailer or governmental agency. BANKERS will examine the purchase order and contact the manufacturer to advise that BANKERS will be purchasing the goods on behalf of its client. BANKERS then contacts the account debtor and advises that BANKERS will be purchasing the goods from the manufacturer and sending the goods to the account debtor. BANKERS advises the account debtor that the account debtor will be required to execute an acknowledgment verifying the invoices and the amounts of the invoices for which BANKERS is providing funding.

BANKERS requires that the account debtor to execute an "invoice verification" agreeing to pay the invoiced amounts to BANKERS rather than the client. Once the verification is obtained, BANKERS purchases the goods, ships them to the account debtor, invoices the account debtor,

2

collects the funds owed, takes its fee and remits the balance to the client. Under this procedure, BANKERS' client is able to perform the transaction without the necessity of having its own funds to purchase the goods described in the Purchase Order.

### B. The BEEP/COMPUSA TRANSACTION

In March of 2002, COMPUSA provided nonparty Beep for Free, Inc. ("BEEP") with a Purchase Order in the amount of $857,340.00. A copy of the Purchase Order is attached to the Complaint as Exhibit A.[1] The transaction contemplated by the Purchase Order involved the sale of approximately 13,000 pagers to COMPUSA. BEEP did not have the financial wherewithal to purchase the beepers from its manufacturer. In addition to the Purchase Order, COMPUSA furnished BEEP with various other documents incidental to the transaction, copies of which are attached to the Complaint as Exhibits B, C, D, and E.

The Vendor Master Agreement (Exhibit B to the Complaint) states that payment terms are net 45 days; the usual 90 day new vendor hold policy required by COMPUSA is deleted; all references on page 2 of the agreement to deductions to invoices were deleted; and there is no provision for COMPUSA to return goods.

The Vendor Agreement Discussion (Exhibit B to the Complaint), provides that "[n]ew vendor payment term situated below the title, has been lined out and the agreement is executed by the Buyer." In addition, the Vendor Agreement Discussion verifies that the contract payment term is net 45 days.

Upon information and belief, the Cross-Dock Agreement (Exhibit C to the Complaint), is

---

[1] Under Rule 10(c) of the Federal Rules of Civil Procedure, "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." Solis-Ramirez v. United States Department of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985).

3

required by COMPUSA of its vendors. Though the Agreement has not been signed by COMPUSA, the transaction proceeded in accordance with the terms of the agreement in that COMPUSA took the $.62 credit for the fee specified in the Agreement.

Importantly, the Cross-Dock Agreement (Exhibit C to the Complaint) provides that "title to the products shall pass to COMPUSA upon delivery of the products to the carrier;" that "Vendor will invoice COMPUSA upon delivery of the products to the carrier . . ." and that "COMPUSA may take deductions against the invoice for non-delivered, damaged, non-conforming or refused products."

### C. BANKERS Becomes Involved in the Transaction

On or about April 11, 2002 BEEP contacted BANKERS to provide purchase order financing for the transaction with COMPUSA. On or about April 23, 2002 BEEP and BANKERS entered into a funding agreement under which BANKERS agreed to provide the funding necessary to complete BEEP's purchase order transaction with COMPUSA.

On or about April 28, 2002 BANKERS conferred with Doug Lane, COMPUSA's purchasing agent. BANKERS advised Mr. Lane that BANKERS provides purchase order funding and would be purchasing the pagers and delivering them to COMPUSA, <u>provided that</u> the transaction was an absolute sale, in that BANKERS did not and does not purchase goods that are consigned to a purchaser. BANKERS informed Lane that it had been provided with the Vendor Agreement, Vendor Agreement Discussion and, as a result of the review of those documents the sale appeared to be absolute. Mr. Lane advised BANKERS that the sale of the pagers was, indeed, an absolute sale.

During the April 28, 2002 discussion with BANKERS, Mr. Lane specifically confirmed the following: (1) the validity of the BEEP purchase order; (2) the validity of the Vendor Agreement and Vendor Agreement Discussion; (3) that the 90-day "new vendor" hold would not apply to this transaction; (4) the shipping date; (5) BANKERS' Notice of Invoice Assignment; (6) BANKERS'

Acknowledgment; (7) BEEP's assignment of its invoices with COMPUSA to BANKERS; and (7) the net 45-day payment terms.

Mr. Lane also confirmed that BANKERS would be paid soon after the pagers were received. In that regard, Mr. Lane specifically requested that the invoices should be sent directly to him after the pagers were delivered so that he could run them to accounting for payment. Representatives of BEEP took part in the conversations between BANKERS and Mr. Lane.

On or about April 28, 2002 BANKERS also conferred with Mark Johnson of COMPUSA who confirmed the Purchase Orders (Exhibit A to the Complaint). On or about May 15, 2002 the COMPUSA carrier received the pagers. Under the terms of the Cross-Dock Agreement (Exhibit C to the Complaint), title for the delivered pagers passed to COMPUSA on May 15. On May 16, 2002 COMPUSA received the pagers.

### D. The Assignment from BEEP to BANKERS

On May 16, 2002 BANKERS Mutual and BEEP served a Notice of Invoice Assignment on COMPUSA. A copy of the Notice of Invoice Assignment is attached to the Complaint as Exhibit F.

On or about May 22, 2002, BANKERS sent Mr. Lane and Ms. Jackie Hacker (COMPUSA's Merchandise Accounting Manager) the BEEP Invoices and BANKERS' Acknowledgment of Assignment and Invoice Verification. The BANKERS' Acknowledgment and Invoice Verification and the Invoices are attached to the Complaint as composite Exhibit G.

The invoices state in pertinent part that "all sales are on net 15 day terms. Payment shall be received on or before 15 days from the date of the invoice...."

On or about May 24, 2002 Ms. Hacker reviewed and verified the invoices, executed the acknowledgment and sent it to BANKERS by facsimile. Based on the acknowledgment, BANKERS wire transferred funds to several parties including BEEP and paid expenses of the transaction.

BANKERS' actions were based upon COMPUSA's approval of the invoices and of COMPUSA's representations contained in the acknowledgment attached to the Complaint as Exhibit G, COMPUSA's verbal representations and other supporting documents.

### E. COMPUSA's Default in Payment

On June 4, 2002 COMPUSA was required to pay the invoices pursuant to the terms of the invoices and the acknowledgment (Exhibit G attached to the Complaint). COMPUSA failed to pay the invoices in a timely fashion.

On June 25, 2002 COMPUSA received a letter (Exhibit H to the Complaint) from Harold Greenberg, COMPUSA's vice president, which letter attempts to materially rewrite the business relationship between BANKERS, COMPUSA and BEEP. There was no consideration for the changes outlined in or proposed by the Greenberg letter. To the extent that the Greenberg letter attempts to state that modifications to the transaction were agreed to, the letter is incorrect as neither BEEP nor BANKERS agreed to any of the changes to the terms of the transaction as outlined in the Greenberg letter.

On June 26, 2002 COMPUSA provided BEEP and BANKERS a COMPUSA Open Accounts Payable Statement (Exhibit I to the Complaint). The Open Accounts Payable Statement indicates that the invoice balance for COMPUSA's transaction with BEEP and BANKERS was $857,340.00 with a net account payable owed of $826,548.08.

On June 27, 2002 BANKERS' representatives spoke with Ms. Hollie Moore of COMPUSA's marketing department with respect to the Marketing Agreement (Exhibit D to the Complaint). Ms. Moore indicated that COMPUSA was owed a balance of $125,000.00 under the Marketing Agreement and required immediate payment. Ms. Moore told BANKERS that, upon receipt of the $125,000.00 payment, COMPUSA would pay the net accounts payable of $826,548.08 in accordance

with the terms of the transaction. BEEP was also informed that full payment by COMPUSA would be made to BANKERS upon COMPUSA receipt of the $125,000.00 payment.

On or about June 28, 2002 and based upon the representations that payment of the net account payable would be made upon receipt of the $125,000.00 owed under the marketing agreement, BANKERS forwarded three checks totaling $125,000.00 to COMPUSA.

On July 24, 2002 BANKERS received a check from COMPUSA in the amount of $121,506.00 (a copy of the check is attached to the Complaint as Exhibit J). The check indicates that it is given in payment of Invoice No. 5130-32016894 in the amount of $138,600.00 less $17,094.00 in returned beeper deductions. The deductions were not explained nor did COMPUSA explain why this particular invoice was paid and others were not.

Notwithstanding that the Invoices, Purchase Order nor Vendor Agreement do not give COMPUSA the right to return goods it purchased from BEEP, COMPUSA has been unilaterally returning pagers in breach of its obligations.

Since July of 2002, BANKERS has repeatedly requested that COMPUSA contact BANKERS to resolve the matter of the outstanding invoices. Copies of BANKERS' letters are attached to the Complaint as Exhibits K, L and M. COMPUSA has failed to respond.

### F. The Relief Sought by BANKERS' Complaint

Following its inability to resolve its dispute with COMPUSA, BANKERS filed a Complaint against COMPUSA, which contains counts for breach of contract, quantum meruit, fraud, and negligent misrepresentation, respectively.

## LEGAL ARGUMENT

### I.

### THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

COMPUSA argues that the Complaint is premised upon "some new, non-existent contract, expressed or implied, that allegedly arose between Bankers and CompUSA." (COMPUSA's Motion to Dismiss, p. 2.) Contrary to COMPUSA's assertion, the Complaint alleges that BANKERS itself has a contractual relationship with COMPUSA, both in its own right, and as the assignee of the BEEP/COMPUSA agreements.

The contractual arrangement as alleged in the Complaint is not the typical two-party contract, but is instead, a more complex transaction between COMPUSA and BANKERS. The Complaint clearly alleges BANKERS' direct negotiations with COMPUSA (see Complaint paras. 12, 13, 14, 15, 17, 18, and 32). Specifically, the Complaint alleges that on or about May 22, 2002, BANKERS sent COMPUSA the BEEP Invoices and BANKERS' Acknowledgment of Assignment and Invoice Verification. The Complaint further alleges that on or about May 24, 2002 COMPUSA reviewed and verified the invoices, executed the acknowledgment and sent it to BANKERS. (Complaint para. 18). The business transaction between BANKERS and COMPUSA is evidenced by the BANKERS' Acknowledgment and Invoice Verification, which was executed by COMPUSA, and by the invoices, which COMPUSA reviewed, verified and acknowledged, and which clearly state that COMPUSA's payments for the pagers were to be remitted to BANKERS. (See Complaint, composite Exhibit G).

For purposes of disposing of COMPUSA's Motion to Dismiss, the aforementioned allegations must be accepted as true, and all factual issues must be resolved in favor BANKERS as the non-moving party. Primerica Financial Services, Inc., v. Mitchell, 48 F. Supp. 2d at 1366. Additionally, the attachments to the Complaint must also be considered, since under Rule 10(c)

Fed.R.Civ.P., "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." Solis-Ramirez v. United States Department of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985).

It is submitted that the foregoing allegations of the Complaint, combined with the documents attached to the Complaint clearly demonstrate the existence of a valid contractual relationship between COMPUSA and BEEP. The Complaint further alleges a material breach of the contract by COMPUSA (Complaint paras. 19, 28, and 33), and that as a result, BANKERS has sustained damages (Complaint para. 34). The foregoing allegations are sufficient to state a claim for breach of correct, thus warranting denial of COMPUSA's Motion to Dismiss. See Abbot Laboratories v. General Electric Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000).[2]

## II.

## THE COMPLAINT STATES A CLAIM FOR QUANTUM MERUIT

Count II of BANKERS' Complaint sets forth a claim for quantum meruit, which has been described by Florida state courts as:

> the legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services from another under circumstances where in the normal course of common affairs a reasonable person receiving such benefit would ordinarily expect to pay for it. W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d 297, 305 (Fla. 1st DCA 1999).

In All Brand Importers, Inc. v. Tampa Crown Distributors, Inc., 864 F.2d 748 (11th Cir. 1989), the Eleventh Circuit confirmed that under Florida law, quantum meruit is available when the subject matter of the contract concerns goods as it does in the case at bar. Id. at 751, citing Osteen v.

---

2 Jurisdiction in this action is based upon diversity of citizenship. Therefore, Florida State law governs the substantive legal issues involved herein. See e.g. United National Insurance Co. v. Jacobs, 754 F.Supp. 865, 868 (M.D. Fla. 1990).

9

Morris, 481 So.2d 1287, 1289-90 (Fla. 5th DCA 1986).

Quantum meruit is a cause of action, which is separate and distinct from the cause of action for unjust enrichment. See W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d at 303, 305. The elements of quantum meruit are as follows:

> To satisfy the elements of quantum meruit, a plaintiff must allege facts that, taken as true, show that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it.

W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d at 305; Ship Construction & Funding Services (USA), Inc. v. Star Cruses PLC, 174 F.Supp.2d 1320, 1326-27 (S.D. Fla. 2001) ("To support Plaintiffs' quantum meruit claim, the Plaintiff's allegations must show that services were performed under the circumstances in which the parties understood and intended that compensation would be paid.").

Although the BANKERS Complaint states a claim for breach of contract (Count I of the Complaint), the claim for quantum meruit is a permitted alternative theory of recovery in accordance with Rule 8(a)(1). See e.g. Shibata v. Lim, 133 F.Supp.2d 1311, 1317-18 (M.D. Fla. 2000).

A review of the allegations of the Complaint (paras. 16, 19, 35-40) and the attachments to the Complaint clearly set forth the requisite elements to state a claim for quantum meruit, thus warranting denial of COMPUSA's Motion to Dismiss. See e.g. W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d at 305; Ship Construction & Funding Services (USA), Inc. v. Star Cruses PLC, 174 F.Supp.2d at 1326-27.

### III.

### BANKERS' CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION ARE NOT BARRED BY THE ECONOMIC LOSS RULE

COMPUSA argues that BANKERS' claims for Fraud and Negligent Misrepresentation (Counts III and IV of the Complaint, respectively) are barred by the economic loss rule. As is established below, this argument is belied by Florida state law.

"In cases controlled by state law, federal courts are bound to follow the decisions of the highest court of the state." Medalie v. FSC Securities Corp., 87 F.Supp.2d 1295, 1301 (S.D. Fla. 2000). Recent decisions of the Florida Supreme Court demonstrate its intent to limit the scope of the ill-conceived and confusing economic loss rule. Of particular importance to the instant case is the Florida's Supreme Court's express refusal to extend the economic loss rule to actions based on fraudulent inducement, see HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1997), and negligent misrepresentation, see PK Ventures, Inc. v. Raymond James & Associates, Inc., 690 So.2d 1296 (Fla. 1997); see also Allen v. Stephan Co., 784 So.2d 456, 457 (Fla. 4th DCA 2000) ("The law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation.").

In HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., *supra*, the Florida Supreme Court offered the following reasoning for declining to apply the economic loss rule to claims for fraudulent inducement:

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even where there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract. Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally "occurs prior to the contract and the standard of truthful representation placed

upon the defendant is not derived from the contract...." Id. at 1239 [citations omitted].

"Fraud in the inducement occurs where one party's ability to negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior." Bradley Factor, Inc. v. United States, 86 F.Supp.2d 1140, 1145 (M.D. Fla. 2000). BANKERS' Complaint clearly alleges representations that were made by COMPUSA as an inducement for BANKERS enter into the transaction with COMPUSA (see Complaint paras. 12, 13, 14, 15, and 18([b]). The Complaint further alleges that had BANKERS known the of the falsity of the representations, it would not have entered into the contract. Therefore, BANKERS ability to negotiate or make informed decisions regarding whether to enter into the contract was undermined by COMPUSA's pre-contractual representations. The factual basis supporting BANKERS' fraud and breach of contract claims are distinguishable, thus making the economic loss rule inapplicable. See e.g. Bradley Factor, Inc. v. United States, 86 F.Supp.2d at 1145-46; Medalie v. FSC Securities Corp., 87 F.Supp.2d at 1306 ("These are the types of allegations that fall under the justification for the fraudulent inducement exception to the economic loss rule.... The ability of the plaintiffs to negotiate fair terms and make an informed decision has been undermined by the defendant's fraudulent behavior."); Meterlogic, Inc. v. Copier Solutions, Inc., 126 F.Supp.2d 1346, 1362 (S.D. Fla. 2000) (accord).

The fact that the allegations of COMPUSA's fraudulent misrepresentations may tangentially concern the subject matter of the underlying contract is of no consequence and will not serve to invoke the economic loss rule. See e.g. Bradley Factor, Inc. v. United States, 86 F.Supp.2d at 1145.

The foregoing reasoning also applies to BANKERS claim for negligent misrepresentation. See PK Ventures, Inc. v. Raymond James & Associates, Inc., 690 So.2d 1296; HTP, Ltd. v. Lineas

Aereas Costarricenses, S.A., 685 So.2d at 1239.

IV.

**COMPUSA'S MOTION TO DISMISS FOR FAILURE TO JOIN A PARTY UNDER RULE 19 SHOULD BE DENIED**

COMPUSA asserts that nonparty BEEP is a necessary party as defined by Rule 19. As will be shown below, COMPUSA's assertion is without merit.

### A. The Standards to be Applied to the Motion

A court deciding whether an action must be dismissed for failure to join an indispensable party engages in a two-part analysis which is set forth in Rule 19: it must first determine if an absent party is "necessary" to suit; then if the party cannot be joined, the court must determine whether the party is "indispensable" so that in equity and good conscience the suit should be dismissed. U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d 901, 907 (9th Cir. 1994). In sum, "[a] party is necessary if it satisfies the factors in Rule 19(a), and a party is indispensable if it satisfies the factors in Rule 19(b). FFOC Co. v. Invent A.G., 882 F.Supp. 642, 657 (E.D. Mich. 1994). Dismissal of the case is warranted only when the absent party is both necessary and indispensable. Id.

The inquiry into whether the absent party is "necessary" involves a second two-part analysis, which involves the application of the factors set forth in Rule 19(a). U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d at 907. Rule 19(a) states in pertinent part that joinder of a nonparty is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring

> double, multiple, or otherwise inconsistent obligations by reason of
> the claimed interest. Fed.R.Civ.P. 19(a).

COMPUSA "as the party moving for dismissal, has the burden of producing evidence demonstrating that [BEEP] is a necessary party." Sierra Club v. Young Life Campaign, Inc., 176 F.Supp.2d 1070, 1077 (D. Colo. 2001).

"If the court determines that a party is not necessary, it need not consider whether it is an indispensable party under Rule 19(b)." City of Lincoln City v. United States Department of the Interior, __F.Supp.2d__, 2002 WL 31496210, *3 (D. Or. April 17, 2002); see U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d at 909. As discussed more fully below, application of the factors set forth in Rule 19(a) demonstrate that BEEP is not a necessary party to this action.

### B. The Assignment to BANKERS Divests BEEP of Any Interest in this Action

"[F]or purposes of defendant's Rule 12(b)(7) motion to dismiss for failure to join parties needed for just adjudication, the well-pleaded factual allegations contained in the ... complaint are accepted as true." Kingstone v. Liberman, 99 F.R.D. 329, 330 (W.D. Pa. 1983); Edgecomb v. Housing Authority of Town of Vernon, 824 F.Supp. 312, 314 (D. Conn. 1993) (accord).

A review of the well-pleaded allegations contained in BANKERS' Complaint, reveal that BEEP assigned to BANKERS all of its rights to receive payment from COMPUSA (see Complaint paras. 17, 18). The documents which are attached to the Complaint substantiate this assignment, and most importantly, the documents confirm COMPUSA's explicit acknowledgment and acceptance of this assignment (see Complaint Exhibits F and G). Additionally, the invoices, which COMPUSA reviewed, verified and acknowledged, clearly state that COMPUSA's payments for the pagers were to be remitted to BANKERS (see Complaint, composite Exhibit G). Thus, BEEP had no right to receive any payments from COMPUSA.

Courts applying the factors set forth in Rule 19(a) have repeatedly held that in a case such as

the one at bar, where a valid assignment has occurred, an assignee such as BEEP no longer has any interest in the subject of the litigation, and is therefore not a necessary party. See Refac Financial Corp. v. Patlex Corp., 879 F.Supp. 468, 470 (E.D. Pa. 1995) ("Because we find an assignment ... we see no reason to join [the initial assignor and the intermediate assignor] as indispensable parties, because according to the [Complaint's] exhibits, they have no remaining interest in the ... contract."); Pay Tel Systems, Inc. v. Seiscor Technologies, Inc., 850 F.Supp. 276, 278 (S.D.N.Y. 1994) ("Where complete assignments have been made, the assignee is the real party in interest and a necessary party under Fed. R. Civ. P. 19."); Samincorp, Inc. v. Southwire Company, Inc., 531 F.Supp. 1, 3 (N.D. Ga. 1980) ("[The absent party's] presence is not 'critical to the disposition of the important issues in the litigation,' ... since it has assigned whatever rights it may have to [the Plaintiff]"); National American Corp. v. Federal Republic of Nigeria, 448 F.Supp. 622, 642 (S.D.N.Y 1978), aff'd 597 F.2d 314 (2nd Cir. 1979); Pioneer Commercial Funding Corp. v. United Airlines, Inc., 122 B.R. 871, 879-880 (S.D.N.Y. 1991).

Additionally, any claim by COMPUSA that BEEP is a necessary party is further negated by its acknowledgment and consent to the assignment of BEEPS' rights and interests to BANKERS. (See Complaint paras. 17, 18; Exhibits F and G). See e.g. Refac Financial Corp. v. Patlex Corp., 879 F.Supp. at 469-470.

"Although [BEEP's] presence at a witness might be of some importance, this is not one of the reasons set forth in Rule 19 as requiring a person to be joined as a party." Samincorp, Inc. v. Southwire Company, Inc., 531 F.Supp. at 3.

**C. BEEP's Failure to Assert an Interest Negates the Claim that it is a Necessary Party**

Rule 19(a)(2)(i) is concerned with the issue of whether "the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect [their]

15

interest." U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d at 908, citing Rule 19(a)(2)(i). "The purpose of Fed.R.Civ.P. 19(a)(2)(i) is to protect the legitimate interests of absent parties, as well as to discourage multiplicitous litigation." U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d at 908.

"The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." Citizen Band Potawatomi Indian Tribe of Oklahoma, 17 F.3d 1292, 1293 (10th Cir. 1994); West Peninsula Title Co. v. Palm Beach County, 41 F.3d 1490, 1492 (11th Cir. 1995), *cert denied*, 516 U.S. 932, 116 S.Ct. 338 (1995) ("The ... movant ha[s] the burden 'to show the nature of the unprotected interests of the absent parties.'").

COMPUSA has failed to produce any evidence showing the nature of BEEP's purported interest or that the protection of that interest will be impaired by its absence. Thus, denial of COMPUSA's motion is warranted See e.g. West Peninsula Title Co. v. Palm Beach County, 41 F.3d at 1492.

It is significant that BEEP has remained silent and has not asserted any interest in the subject matter of the lawsuit despite the fact that the invoices upon which the lawsuit is premised have remained outstanding for more than seven months (see Complaint para. 19). "[C]ourts have noted that Rule 19 does not require joinder when the absent party does not assert an interest." Deloach v. Infinity Broadcasting, 1998 WL 70593, *5 (N.D. Ill. 1998), aff'd 164 F.3d 398 (7th Cir. 1999); see Boczon v. Northwestern Elevator Co., Inc. 652 F.Supp. 1482, 1486 (E.D. Wis. 1987) ("Rule 19 does not warrant joinder when the outsider does not assert an interest.").

In Samincorp, Inc. v. Southwire Company, Inc., 531 F.Supp. 1, the defendant moved to dismiss the lawsuit, arguing that the assignor of the plaintiff's rights was a necessary party to the

action. The Court denied the motion, reasoning that the assignor "itself claim[ed] no interest relating to the subject of the action before the court." Id. at 3.

BEEP's failure to express its own interest against the parties in this action, and COMPUSA's failure to produce any evidence to demonstrate how BEEP's interest would be severely impaired by proceeding with this case warrants a finding that BEEP is not a necessary party to this litigation. See e.g. West Peninsula Title Co. v. Palm Beach County, 41 F.3d at 1492; Deloach v. Infinity Broadcasting, 1998 WL 70593, *5.

### D. COMPUSA has No Risk of Incurring Multiple Obligations

Rule 19(a)(2)(ii) is concerned with whether "the disposition of the action in the person's absence may ... leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a)(2)(ii); U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d at 908.

"Such a risk is typically created by allocation of a limited fund to which absent parties are entitled." U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d at 908. COMPUSA does not argue that BEEP's absence will subject it to any such risks.

### V.

### COMPUSA'S MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED

COMPUSA's Motion for a More Definite Statement with respect to BANKERS' claims for breach of contract and quantum meruit (Counts I and II, respectively) is without any basis in light of the liberal pleading requirements under the Federal Rules of Civil Procedure.

> In the federal system of the rules employ the concept of notice pleading and motions for more definite statement are disfavored in light of the liberal discovery practices. Such a motion should be granted only when the pleading to which the motion is directed is so

17

>vague or ambiguous that the party cannot reasonably be expected to respond [emphasis added].

<u>Scarfato v. National Cash Register Corp.</u>, 830 F.Supp. 1441, 1443 (M.D. Fla. 1993); <u>In re Asbestos Litigation</u>, 679 F.Supp. 1096, 1100 (S.D. Fla. 1987) (accord).

"The motion [for a more definite statement] is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." <u>Aventura Cable Corp. v. Rifkin/Narragansett South Florida CATV Limited Partnership</u>, 941 F.Supp. 1189, 1195 (S.D. Fla. 1996); <u>Primerica Financial Services, Inc., v. Mitchell</u>, 48 F. Supp. 2d at 1369 (accord). COMPUSA's issue with respect to the Complaint is not that it is <u>unintelligible</u>, but rather that it is lacking in <u>specificity</u>. Specifically, COMPUSA asserts that the allegations of the Complaint

>do not (a) clearly set forth BANKERS' rights and obligations regarding the beepers delivered to COMPUSA by [BEEP] and (b) clearly describe the contract that "arose" between BANKERS and COMPUSA. (COMPUSA's Motion to Dismiss, p. 3).

As argued in Points I and II above, the Complaint contains clear claims for breach of contract and quantum meruit. Any specificity which COMPUSA believes is missing from the Complaint may be obtained through discovery procedures and is not a basis for a motion for a more definite statement. <u>See</u> e.g. <u>Scarfato v. National Cash Register Corp.</u>, 830 F.Supp. 1441, 1443 (M.D. Fla. 1993).

## CONCLUSION

For the reasons set forth above, the Court should deny COMPUSA's Motion to Dismiss or, Alternatively, Motion for a More Definite Statement in its entirety.

BOOSE CASEY CIKLIN LUBITZ
MARTENS MCBANE & O'CONNELL
515 North Flagler Drive, 18th Floor
West Palm Beach, FL 33401
Phone: 561-832-5900,
Fax: 561-820-0389

By:_____
    BRIAN B. JOSLYN
    Florida Bar No. 332496
    JEFFREY M. GARBER
    Florida Bar No. 0102776

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by regular U.S. Mail this  15th  day of January, 2003, to: Lawrence P. Rochefort, Esq., Akerman Senterfitt, 222 Lakeview Avenue, Suite 400, West Palm Beach, Florida 33401.

BOOSE CASEY CIKLIN LUBITZ
MARTENS MCBANE & O'CONNELL
515 North Flagler Drive, 18th Floor
West Palm Beach, FL 33401
Phone: 561-832-5900,
Fax: 561-820-0389

By:_____
    BRIAN B. JOSLYN
    Florida Bar No. 332496
    JEFFREY M. GARBER
    Florida Bar No. 0102776